FILED BY [signature] D.C.
MAY 23 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-20215-CR-SCOLA(s)**
**18 U.S.C. § 1349**
**18 U.S.C. § 982**

**UNITED STATES OF AMERICA**

**vs.**

**NADYS MARTINEZ and**
**ARMANDO LORENZO,**

**Defendants.**
_______________________________/

**SUPERSEDING INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times material to this Superseding Indictment:

**The Medicare Program**

1. The Medicare Program (Medicare) was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare programs covering different types of benefits were separated into different program "parts." Part D of Medicare (the "Medicare Part D Program") subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. The Medicare Part D Program

was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and went into effect on January 1, 2006.

3. In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

4. A pharmacy could participate in the Part D Program by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers (PBMs). A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan sponsor reimbursed the PBM for its payments to the pharmacy.

5. A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong. Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

6. Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's

expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

7. Medicare and Medicare drug plan sponsors, were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

**The Defendants and Related Company**

8. Ready Scripts, Inc. ("Ready Scripts") was a Florida corporation located in Miami, Florida, that operated as a retail pharmacy purportedly providing prescription drugs to Medicare beneficiaries.

9. **NADYS MARTINEZ,** a resident of Lee County and a former resident of Miami-Dade County, was an owner of record, president, and registered agent of Ready Scripts.

10. **ARMANDO LORENZO,** a resident of Miami-Dade County, was a beneficial owner and operator of Ready Scripts.

**CONSPIRACY TO COMMIT HEALTH CARE FRAUD AND WIRE FRAUD**
**(18 U.S.C. § 1349)**

From in or around May 2012, and continuing through in or around June 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**NADYS MARTINEZ**
**and**
**ARMANDO LORENZO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b),

specifically, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b. to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks for the referral of fraudulent Medicare prescriptions to Ready Scripts; (b) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (c) concealing the submission of false and fraudulent claims to health care benefit programs, and the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for the personal use and benefit of themselves and others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

11. **NADYS MARTINEZ** and **ARMANDO LORENZO** recruited and paid kickbacks to co-conspirators, in exchange for referring Medicare beneficiaries to be used in conjunction with false and fraudulent billing of the Medicare Part D Program through Ready Scripts.

12. **NADYS MARTINEZ, ARMANDO LORENZO,** and their co-conspirators submitted and caused the submission of claims, via interstate wire communications, that falsely and fraudulently represented that prescription drugs had been provided to the Medicare beneficiaries by Ready Scripts.

13. As a result of such false and fraudulent claims, Medicare prescription drug plan sponsors, through their PBMs, made overpayments funded by the Medicare Part D Program to the corporate bank account of Ready Scripts.

14. **NADYS MARTINEZ, ARMANDO LORENZO,** and their co-conspirators used the proceeds from the false and fraudulent Medicare Part D claims for their own use and the use of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
## (18 U.S.C. § 982)

1. The allegations contained in this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **NADYS MARTINEZ** and **ARMANDO LORENZO**, have an interest.

2. Upon conviction of the violation of Title 18, United States Code, Section 1349 alleged in this Superseding Indictment, the defendants so convicted shall forfeit to the United States all of their respective rights, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If the property subject to forfeiture, as a result of any act or omission of the defendants,

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

4. The substitute property subject to forfeiture includes, but is not limited to:

    (a) the real property and appurtenances located at 12920 S.W. 220th Terrace, Miami, FL 33170; Lot 4, Block 11, of Estate Mansions First Addition, according to the Plat thereof, as recorded in Plat Book 165, Page 48, of the Public Records of Miami-Dade County, Florida;

All pursuant to Title 18, United States Code, Section 982(a)(7); and the procedures set forth

at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

Nadys Martinez and Armando Lorenzo,

Defendants.

CASE NO. 19-20215-CR-SCOLA(s)

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

✓ Miami ___ Key West
___ FTL ___ WPB ___ FTP

New defendant(s) Yes ✓ No ___
Number of new defendants ___
Total number of counts 1

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) Yes
List language and/or dialect SPANISH

4. This case will take 5 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| | (Check only one) | | | (Check only one) |
|---|---|---|---|---|
| I | 0 to 5 days | ✓ | Petty | |
| II | 6 to 10 days | | Minor | |
| III | 11 to 20 days | | Misdem. | |
| IV | 21 to 60 days | | Felony | ✓ |
| V | 61 days and over | | | |

6. Has this case previously been filed in this District Court? (Yes or No) Yes
If yes: Judge Case No. 19-20215-CR-SCOLA
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No) No
If yes: Magistrate Case No. ___
Related miscellaneous numbers: ___
Defendant(s) in federal custody as of ___
Defendant(s) in state custody as of ___
Rule 20 from the District of ___
Is this a potential death penalty case? (Yes or No) No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? Yes ___ No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? Yes ___ No ✓

AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500795

*Penalty Sheet(s) attached

REV 8/13/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** ARMANDO LORENZO

**Case No:** 19-20215-CR-SCOLA(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

*** Max. Penalty:** Twenty (20) years' imprisonment

Counts #:

***Max. Penalty:**

Counts #:

***Max. Penalty:**

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**